# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GREG KOON,

        *Plaintiff*,

vs.

SEDGWICK COUNTY, KANSAS,

        *Defendant.*

Case No.08-1123-EFM

## MEMORANDUM AND ORDER

Plaintiff Greg Koon has been an employee of Defendant Sedgwick County, Kansas, since 1988, where up until August 7, 2007, he worked as Crew Chief at Defendant's Clonmel Yard location. While working for Defendant in 2007, a co-worker filed a hostile work environment claim with Defendant's Human Resources Department against Plaintiff's supervisor, Martin Seiter. After being interviewed in connection with that complaint, Plaintiff and his supervisor were transferred from the Clonmel Yard to other county yards. Plaintiff now alleges that his transfer and demotion were a result of the statements he gave in his interview with Human Resources regarding his co-worker's complaint. Defendant now moves for Summary Judgement on all of Plaintiff's claims. For the following reasons, the Court grants the motion.

### I. BACKGROUND

Plaintiff Greg Koon was hired by Defendant Sedgwick County, Kansas in 1988 as an Equipment Operator Level 1. Plaintiff later received a promotion to Equipment Operator Level 2,

and in 2003, was promoted to Crew Chief at Defendant's Clonmel Yard. Plaintiff's supervisor, Martin Seiter, was promoted from Crew Chief to Yard Foreman of the Clonmel Yard.

In 2004, Stacey Laffey, Plaintiff's co-worker, filed a sexual harassment claim against Plaintiff. Defendant's Diversity and Employee Relations Manager, Dorsha Kirksey, investigated Laffey's claim and determined it to be unfounded. However, through this investigation, Kirksey determined that Plaintiff did not work well with Seiter, and was generally non-cooperative and unsupportive of him. As a result, Kirksey recommended that Plaintiff be removed from his supervisory position as Crew Chief. Rather than remove Plaintiff from his position, Defendant instead chose to put Plaintiff on 90 days probation.

In 2007, Laura Alexander, another Clonmel Yard employee, filed a hostile work environment claim against Seiter. As a result of this complaint, Plaintiff was again interviewed by Kirksey. Prior to attending this interview, Plaintiff prepared a written statement that was incorporated into his interview. In this statement, Plaintiff alleged against Seiter, amongst other things, acts of theft, fostering dangerous working conditions, making disparaging comments to employees, and personal use of Defendant's property. Kirksey's subsequent report to Defendant evidenced a continuing breakdown in communication and cooperation between Plaintiff and Seiter, and recommended that each be transferred from the Clonmel Yard to separate locations. Thereafter, Plaintiff was transferred to Defendant's Andale Yard and returned to a Equipment Operator Level 2 position, but retained the same pay he had as Crew Chief at the Clonmel Yard. Seiter was also transferred to another public works yard.

Plaintiff's Amended Complaint alleges a single count of retaliatory demotion under Kansas common law as recognized in *Palmer v. Brown*,[1] and *Brigham v. Dillon Companies, Inc.*[2] Plaintiff alleges he was transferred to Defendant's Andale Yard, which is a greater distance from his home, because of the allegations he made against his supervisor in his statement provided to Kirksey. As a result, Plaintiff alleges that he lost opportunities for promotions and lost benefits, and in addition, requests damages due to his longer commute. Plaintiff also requests reinstatement to his former Crew Chief position at Defendant's Clonmel Yard.

## II. SUMMARY JUDGEMENT STANDARD

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim.[5] In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[6]

---

[1] 242 Kan. 893, 752 P.3d 685 (1988).

[2] 262 Kan. 12, 935 P.2d 1054 (1997).

[3] Fed. R. Civ. P. 56(c).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[5] *Id.*

[6] *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

When the moving party does not bear the burden of persuasion at trial, it bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[7] The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[8] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[9] If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[10] In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[11] The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[12]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[9] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

[10] *Celotex*, 477 U.S. at 323.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[13] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

# ANALYSIS

Kansas courts have recognized two limited instances in which the law departs from the traditional employment-at-will doctrine. The two recognized exceptions are: (1) where an employer discharges an employee because he has exercised rights under Kansas workers' compensation laws;[14] and (2) where an employer terminates an employee because of the employee's good faith reporting or threat of reporting a serious infraction of the rules, regulations, or law pertaining to public health, safety, and the general welfare by an employer or co-worker.[15] These same exceptions apply in demotion cases as well as termination cases.[16] Additionally, as stated by the Kansas Supreme Court, the "linchpin of the tort for retaliatory demotion is a violation public policy."[17]

In order for whistleblowing to be protected, the employee must believe he is reporting that his employer or another colleague has committed a serious infraction of the rules, regulations, or law pertaining to public health, safety, or the general welfare.[18] Furthermore, the employee's whistleblowing must have been done "out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain."[19] The employee must also show that his employer had knowledge of his alleged reporting before the employer took

---

[14]*Brigham v. Dillon Companies, Inc.*, 262 Kan. 12, 20, 935 P.2d 1054, 1059-1060 (1997) (recognizing tort of retaliatory demotion).

[15]*Palmer v. Brown*, 242 Kan. 893, 900, 752 P.3d 685, 689-690 (1988) (recognizing tort of retaliatory termination); *Frye*, 15 F. Supp. 2d at 1046 (good faith reporting of rules, regulation, or law pertaining to public health, safety, or general welfare commonly known as "whistleblowing").

[16]*See Reed v. Nellcor Puritan Bennett*, 244 F. Supp. 2d 1205, 1215 (D. Kan. 2003).

[17]*Brigham*, 262 Kan. at 19, 935 P.2d at 1059.

[18]*Palmer*, 242 Kan. at 900, 752 P.2d at 689.

[19]*Id.*

adverse action against him.[20] Lastly, the employee must show a causal link between the exercise of protected activity, whistleblowing in this case, and the adverse employment action by his employer.[21] The causal link is most often shown by a close temporal proximity between making a report and the adverse employment action.[22]

In the present case, Plaintiff alleges he was whistleblowing when he provided a statement during his interview with Kirksey relating to Laura Alexander's hostile work environment complaint.[23] Through this statement, Plaintiff alleged numerous claims against Martin Seiter, his immediate supervisor, including theft of government property, using county property for his personal use, and using county equipment during and after business hours to perform favors for others. The allegations made in Plaintiff's statement, specifically theft of government property, are clearly examples of reporting violations of rules, regulations, or laws pertaining to the public health, safety, or general welfare.[24] The Kansas Supreme Court recognized that it has long been the public policy of the State of Kansas to encourage citizens to report crime.[25] There is no distinction between reporting violations by initiating the report and reporting by participating in another proceeding, and

---

[20]*Id.*

[21]*Id.*

[22]*See Rebarchek v. Farmers Coop. Elevator & Mercantile Ass'n. of Dighton, Kan.*, 272 Kan. 546, 555, 35 P.3d 892, 899 (2001); *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 540, 840 P.2d 534, 540 (2003) ("Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive.") (quoting 2A Larson's Workmen's Compensation Law § 68.36(c) (1992)) .

[23]Plaintiff's written statement is attached to Defendant's Memoradum in Support of Defendant's Motion for Summary Judgment.

[24]*See Ali v. Douglas Cable Commc'ns.*, 929 F. Supp. 1362, 1389 (D. Kan. 1996).

[25]*Palmer*, 242 Kan. at 899, 752 P.2d at 689.

any such reporting of violations is protected if done in good faith.[26] As noted above, Plaintiff alleged the violations and general grievances in response to questioning regarding the merits of another employees complaint, and not on his own initiative. The facts outlined above show that Plaintiff reported violations of the required nature to Defendant's management team under conditions that his employment required him to submit to the interview. Thus, we conclude Plaintiff's reporting is protected under Kansas whistleblowing caselaw.

Kansas courts follow the same three-part *McDonnell Douglas* framework the United States Supreme Court created for evaluating employment retaliation in violation of Title VII, 42 U.S.C. § 2000e-3.[27] A plaintiff can establish a prima facie case through either direct or circumstantial evidence.[28] After a plaintiff proves a prima facie case, the burden of going forward shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment action.[29] If the defendant offers a proper, non-discriminatory, reason, the burden shifts back to the plaintiff to establish that the defendant's proffered reason is pretextual.[30] To avoid summary judgment after the defendant provides its reason, the plaintiff must assert specific facts establishing a triable issue as to whether the defendant's reason for its action is merely a cover-up or pretext for retaliation.[31]

---

[26] *Id.*, 242 Kan. at 900, 752 P.2d at 689-690.

[27] *White v. Tomasic*, 31 Kan. App. 2d 597, 601, 69 P.3d 208, 211 (2003) (citing *Woods v. Midwest Conveyor Co.*, 231 Kan. 763 (1982)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (plaintiff employee first establishes prima facie case, defendant employer then proffers a legitimate, non-discriminatory reason for the action, and lastly, employee must marshal additional evidence that employers rationale is pretextual).

[28] *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1192-1193 (10th Cir. 2002).

[29] *Shaw v. Sw. Kan. Ground Water Mgmt. Dist. Three*, 42 Kan. App. 2d 994, 999, 219 P.3d 857, 862 (2009).

[30] *Id.*

[31] *Bracken v. Dixon Indus., Inc.*, 272 Kan. 1272, 1276, 38 P.3d 679, 682 (2002).

In this case, Plaintiff alleges that he was transferred to a different yard because of the statement he provided to Kiksey regarding his supervisors improper activities. As a result of the transfer, Plaintiff claims Defendant demoted him to a lesser title with less responsibility and no supervisory role, and caused him increased travel expenses.[32] Defendant responds by essentially arguing that Plaintiff did not suffer a reduction in pay, and therefore, was not demoted. Defendant, therefore, asserts Plaintiff cannot prove he has suffered any damages.

Generally, reassignment of job duties is not automatically actionable.[33] To be actionable, the transfer must be materially adverse to a reasonable employee.[34] An action is materially adverse only if the action "might well dissuade a reasonable employee from [engaging in protected activity]."[35] Based on the foregoing, the Court is convinced that a transfer from a job with supervisory responsibilities to one without, also with a lesser job title, could dissuade a reasonable employee from reporting infractions of the rules, regulations, or law pertaining to public health, safety, or the general welfare.

After reviewing the record as a whole, the Court concludes that Plaintiff has established a *prima facie* case of employment retaliation under Kansas common law. Some of the allegations contained in Plaintiff's statement given to Ms. Kirksey are reports of serious infractions of the rules, regulations, or laws pertaining to the public health, safety, or general welfare. Furthermore, it is a

---

[32]Plaintiff traveled 16 miles per day to get to work and back home while working at the Clonmel Yard. He now has to travel 56 miles each day for work at the Andale Yard.

[33]*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006).

[34]*See id.* at 68.

[35]*Id.*

well established public policy to encourage citizens to report crime.[36] The reporting of crimes committed by an employer is one type of reporting that the employment retaliation caselaw is meant to cover.[37] Defendant neither argues that Plaintiff made this report out of malice, spite, or personal gain, nor that the Plaintiff failed to have a good faith basis for making the report to Kirksey.

Plaintiff has established that he was reporting to company management infractions of rules, regulations, or laws of public safety within the meaning of the law and the spirit of public policy. As a result of the 2007 investigation, Kirksey recommended that both Plaintiff and Seiter each be transferred from the Clonmel Yard. Approximately three months after reporting the violations in his statement to Kirksey, Plaintiff was transferred.[38] While close temporal proximity gives rise to an inference of retaliatory motive, distant temporal proximity does not and is insufficient to establish a causal link between whistleblowing and an employer's adverse action against an employee.[39] However, the temporal proximity in this case of three months, coupled with the recommendation from Kirksey that stemmed from the investigation, is sufficient to establish at least a *prime facie* showing of retaliatory motive.

Because Plaintiff has made a *prima facie* showing of retaliation, Defendant has the burden of establishing a legitimate, non-discriminatory reason for the transfer. Defendant does not dispute

---

[36]*Palmer*, 242 Kan. at 899, 752 P.2d 685, 689.

[37]*See Larson v. Ruskowitz*, 252 Kan. 963, 972-974, 850 P.2d 253, 261-262 (1993).

[38]Documents in the record indicate that Plaintiff made the allegations as part of his statement to Dorsha Kirksey sometime around May 2007. Plaintiff was notified of his transfer on August 6, 2007, or about three months after making his statement to Ms. Kirksey.

[39]*Compare Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-1240 (10th Cir. 2004) (prima facie established where time between excercise of protected activity and adverse action was one month); *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (one and one half month period between protected activity and adverse action may, by itself, establish causation); *with Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period, standing alone, not sufficient to establish causal link)

that Plaintiff was transferred after he made his report, but contends Plaintiff was not transferred because he made the allegations against Seiter. Defendant asserts that Plaintiff was transferred to resolve a dysfunctional relationship among employees, in this case, the more sensitive relationship between an employee and his supervisor. Furthermore, Plaintiff was not singled-out for adverse treatment as a result of making his statement regarding Alexander's complaint; both Plaintiff and Seiter were transferred from the Clonmel Yard because of reasons unrelated to Plaintiff's allegations against Seiter. Specifically, both Plaintiff and Seiter were transferred because of their inability to work cohesively, which impacted the moral and efficiency of other employees at the yard.

Kirksey's report from the 2004 complaint by Laffey states that there wass a lack of communication and cooperation between Plaintiff and Seiter. The same Exhibit, incorporated within the Findings and Recommendations on the memo dated July 9, 2007, indicated that Kirksey found that the same unprofessional and uncooperative conduct between Plaintiff and Seiter has persisted since her 2004 investigation. As a result of her 2007 investigation, Kirksey also determined moral to be extremely low at the Clonmel Yard and turnover abnormally. She attributed the low moral and high turnover rate to the unprofessional and uncooperative relationship between Plaintiff and Seiter. Kirksey determined that Plaintiff and Seiter's discord had "poisoned" the atmosphere and professional expectations of Plaintiff's co-workers. As a result of completing two investigations only two years apart, Kirksey recommended Plaintiff and Seiter be separated by removing both from their co-workers and the Clonmel Yard.

For these reasons, the Court finds that Defendant transferred Plaintiff to the Andale Yard in response to legitimate concerns about employee cooperation, moral, and efficiency. Defendant has met its burden under the *McDonnell Douglas* framework, and the burden shifts back to Plaintiff to

show that Defendant's reasoning for transferring him was pretextual. To avoid summary judgment at this stage, an employee is required to assert "specific facts establishing a triable issue as to whether the employer's reason for [demotion] is a mere cover-up or pretext" for a retaliatory motive.[40] An employee's own subjective belief that an employer's reason is a pretext is not sufficient.[41] "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate."[42]

Plaintiff asserts no further facts to show that Defendant's reason for transferring him is pretextual, and therefore, fails to present any material fact or triable issue. Plaintiff offers letters submitted on his behalf and at his request by his co-workers that they did not believe Plaintiff was the cause of the dysfunction. The letters, however, only address how the individual employee writing the letter feels about Plaintiff and his leadership. The letters do not address Plaintiff's professional relationship with Seiter beyond their assertions that Seiter is the cause of the low moral and high turnover. Therefore, the letters do not contradict Kirksey's analysis and recommendation to separate Plaintiff and Seiter to resolve legitimate business concerns. Because Plaintiff has not offered any specific facts tending to show that Defendant's reasons for transferring him is merely a cover-up for a retaliatory motive, the Court finds that Plaintiff has failed to meet his burden for showing pretext. Therefore, Defendant is entitled to Summary Judgment on Plaintiff's claims.

---

[40]*Bracken*, 272 Kan. at 1276, 38 P.3d at 682.

[41]*See Goodman v. Wesley Med. Ctr., L.L.C.,* 276 Kan. 586, 595, 78 P.3d 817, 824 (2003).

[42]*Bracken*, 272 Kan. at 1276, 38 P.3d at 682 (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir. 1993) *overruled in part on other grounds*, *Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir. 1995).

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 43) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 22nd day of June, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE